IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

DAVID OSBURN,

                    Plaintiff,

v.                                                              Case No. 21-CV-234-JWB

ARDMORE SUZUKI, INC., et al.,

                    Defendants.

## MEMORANDUM & ORDER

Presently before the court are three motions.  Plaintiff David Osburn moves to remand the case to the district court of Bryan County, Oklahoma, where the case was originally filed.  (Doc. 13.)  Defendant Polaris Industries, Inc. ("Polaris") moves to transfer the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404.  (Doc. 14.)  And Defendant Ardmore Suzuki, Inc. ("Suzuki") moves to dismiss the claims against it.  (Doc. 29.)  The motions are fully briefed and ripe for decision.  (Docs. 16, 17, 18, 32, 34.)  For the reasons stated below, Plaintiff's motion to remand is DENIED, and Defendants' motions are GRANTED.

## I.    FACTUAL BACKGROUND

This is a products liability case wherein Plaintiff, a resident of Gun Barrel City, Texas, alleges he was severely injured when the Polaris Ranger XP 1000 all-terrain vehicle ("Polaris Ranger") he was operating caught fire.  Polaris is the manufacturer of the Polaris Ranger, and Suzuki is the dealer who sold the Polaris Ranger to Plaintiff.  Polaris is a Delaware corporation with its principal place of business in Minnesota.  (Doc. 2 at 2.)  Suzuki is incorporated and has its principal place of business in Oklahoma.  (Doc. 26 at 1; Doc. 2 at 2.)  Plaintiff does not specify where in Texas the accident occurred, but Polaris states that it occurred at River Run Park in Cherokee County, Texas.  (Doc. 14-1 at 1.)  Plaintiff does not dispute this.

1

On August 9, 2021, Plaintiff filed this action in the District Court of Bryan County, Oklahoma. (Doc. 2-1 at 2.) Plaintiff brought claims for strict liability, negligence, breach of warranty, and misrepresentation against both Defendants. The claims against Polaris virtually mirrored those against Suzuki. Plaintiff alleged that the Polaris Ranger was "designed, manufactured, marketed and placed into the stream of commerce" by Polaris "in a defective and unreasonably dangerous condition."[1] (Doc. 2-1 at 3.) Plaintiff further alleged that Suzuki knew the Polaris Ranger was defective and unreasonably dangerous, but marketed, sold, and delivered it to Plaintiff anyway. (*Id*. at 3-4.) Finally, Plaintiff alleged that the Polaris Ranger "was in the same or substantially the same condition as it was when it left Defendant Polaris' and Defendant Suzuki's possession." (*Id*. at 4.)

Also on August 9, the Bryan County Court Clerk issued the summons for Polaris and Suzuki. (Doc. 2-2.) On August 11, before either Defendant had been served, Polaris filed a Notice of Removal. (Doc. 2.) Polaris removed the case pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 "because this action is a civil dispute involving completely diverse parties and an amount in controversy exceeding $75,000." (*Id.* at 1.) On August 12, 2021, Plaintiff's counsel states that she received the summons and file-marked petition and commenced the process of serving Defendants. (Doc. 13-1.) Polaris filed its answer on September 9, 2021. (Doc. 10.) On September 10, Plaintiff filed a motion to remand the case back to the district court of Bryan County, Oklahoma. (Doc. 13.) Plaintiff contends that the forum-defendant rule prohibits removal when a resident defendant (i.e., Suzuki) has been properly joined and served, even if there is complete diversity of citizenship. (*Id*. at 4.)

---

[1] The petition offers no details about the specific cause of the accident or the defect that allegedly made the Polaris Ranger unreasonably dangerous.

2

Also on September 10, Polaris filed its motion to transfer venue to the Eastern District of Texas. (Doc. 14.) Polaris contends that the forum-defendant rule does not apply here, and removal was therefore proper, because the action was removed before Suzuki was served. (Doc. 14 at 2.) However, Polaris argues that the case should be transferred to the Eastern District of Texas as Oklahoma has no interest in adjudicating this dispute. (*Id*. at 9.) Polaris contends that the only connection to Oklahoma is the allegation that Suzuki, an Oklahoma corporation, sold the Polaris Ranger to Plaintiff. But according to Polaris, Suzuki was fraudulently joined in order to bring the case in Oklahoma and to prevent removal to federal court. In support, Polaris cites an Oklahoma law that prohibits most products liability actions against non-manufacturing sellers, as well as the petition's sparse allegations against Suzuki that largely overlap with those against Polaris. (*Id*. at 2.)

On December 21, 2021, the then-assigned district judge entered an order stating: "[p]ursuant to Rule 4(m) of the Federal Rules of Civil Procedure, notice is hereby given that the claims against Defendant Ardmore Suzuki, Inc. shall be dismissed for failure to serve if proof of service is not filed by 1/21/2022." (Doc. 19.) On December 27, 2021, Plaintiff filed a proof of service, which stated that Suzuki was served with the petition and summons on August 19, 2021. Attached is a return receipt, indicating that the package was addressed to: "Ardmore Suzuki, Inc., Dba Jones Power Sports, c/o David Jones, 9416 US HWY 70, Durant, OK 74701." (Doc. 20-1.) The return receipt contains a section captioned "complete this section on delivery." In that section, "HCC19HC63" was handwritten on the signature line,[2] "David Jones" was handwritten on the

---

[2] Plaintiff contends that these irregularities were due to the U.S. Postal Service's ("USPS") modified procedures during the COVID-19 pandemic. Plaintiff's counsel explains that she spoke with the Postmaster at the Durant Post Office, who confirmed that "the service of process was made at the same address indicated on the Domestic Return Receipt as evidenced by the geo tracking software the post office has available." (Doc. 32 at 14.) The Postmaster told her that "HC 63" means "Highway Contract 63" and "C19" stands for "COVID-19." (*Id*.) Plaintiff also attaches the USPS Tracking information for the package, which states that the package was "delivered to an individual at the address at 1:34 pm on August 19, 2021 in DURANT, OK 74701." (Doc. 32-5.)

"received by (printed name)" line, "8-19" was provided as the date of delivery, and a box was checked indicating that the delivery address was different from what the article was addressed to (but no other address was provided). (*Id*.) The return receipt reflects that Plaintiff had delivery completed via certified mail, restricted delivery. (*Id*.)

On January 3, 2022, Suzuki moved to dismiss under Rule 12(b)(5) for failure to properly effect service and 12(b)(6) for failure to state a claim. (*See* Doc. 24 at 1-2.) Suzuki first argued that Plaintiff's proof of service failed to comply with Oklahoma law as it was not signed by anyone. (*Id*. at 4-5.) Suzuki further argued that the petition failed to state a claim as it offered "few facts about the accident, any defect, or what Suzuki, which sold the Polaris ATV, did to purportedly incur liability for selling an allegedly defective product that it did not design or manufacture." (*Id*. at 1.) And Suzuki also argued that Plaintiff's claims against Suzuki were all product liability claims that are barred against non-manufacturing product sellers by Oklahoma law. Also on January 3, the then-assigned judge entered an order inviting Plaintiff, if he so desired, to file an amended complaint by January 17, 2022, providing additional factual averments which might overcome Suzuki's claims of insufficiency. (Doc. 25.)

On January 10, Plaintiff had the state-court issued summons and Petition personally served upon David Jones, Suzuki's registered agent, as well as Zack Leatherwood, Suzuki's general manager. (Doc. 27-6.) Such personal service occurred 152 days after this action was removed to this court.

On January 17, Plaintiff filed an amended complaint, which includes some additional factual allegations specific to Suzuki. (Doc. 26.) Specifically, the amended complaint alleges that Suzuki performed "dealer preparations, inspections, certifications, service, and maintenance" on the Polaris Ranger before selling it to Plaintiff. (*Id*. at ¶ 6.) "[O]ne or more of the dealer

preparations . . . performed by Defendant Suzuki included installation/modification of the lighting and/or electrical systems of the Polaris Ranger." (*Id.*)  The amended complaint alleges that these installations/modifications were a "substantial factor in causing the September 4, 2019, incident and damages to Plaintiff and/or the proximate and/or producing cause of the September 4, 2019, incident and damages to Plaintiff, thus rendering Defendant Suzuki strictly liable." (*Id.* at ¶ 19.) The amended complaint brings the same claims of strict liability, negligence, breach of warranty, and misrepresentation against both Defendants.

On January 31, Suzuki filed a second motion to dismiss.  (Doc. 29.)  Suzuki raises essentially the same arguments as it did in its original motion to dismiss.  According to Suzuki, "[n]either the filing of Plaintiff's amended pleading nor his new attempt at service has remedied the issues presented in Suzuki's first Motion." (*Id.* at 1.)

The case was reassigned to the undersigned on May 6, 2022.  (Doc. 37.)

## II.   LEGAL STANDARDS

Motions to dismiss for insufficient service of process are governed by Federal Rule of Civil Procedure 12(b)(5).  If service of process is insufficient under Federal Rule of Civil Procedure 4, a federal court is without personal jurisdiction over that defendant.  *Rivera v. Riley Cnty. Law Bd.*, 2011 WL 4686554, at *2 (D. Kan. 2011) (citing *Blackmon v. U.S.D. 259 Sch. Dist.*, 769 F. Supp. 2d 1267, 1273 (D. Kan. 2011)).  "Once a defendant challenges service of process in a motion to dismiss under 12(b)(5), the burden falls on the plaintiff to show [he] has satisfied the statutory and due process requirements with service of process." *Id.*

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts

are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283

(10th Cir. 2008).    Conclusory allegations, however, have no bearing upon the court's

consideration.  *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

> As the Tenth Circuit has observed:

> Determining whether a complaint contains enough well-pleaded facts sufficient to
> state a claim is a context-specific task that requires the reviewing court to draw on
> its judicial experience and common sense.  The court must determine whether the
> plaintiff has pleaded enough facts to state a claim for relief that is plausible on its
> face, not just conceivable.  Though a complaint need not provide detailed factual
> allegations, it must give just enough factual detail to provide fair notice of what the
> claim is and the grounds upon which it rests.  Threadbare recitals of the elements
> of a cause of action, supported by mere conclusory statements do not count as well-
> pleaded facts.  If, in the end, a plaintiff's well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the complaint fails to state a
> claim.

*Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citations and internal quotation marks

omitted.)

## III.   DISCUSSION

Plaintiff moves to remand the case to the district court of Bryan County, Oklahoma, where

the case was originally filed.  (Doc. 13.)  Polaris moves to transfer the case to the Eastern District

of Texas pursuant to 28 U.S.C. § 1404.  (Doc. 14.)  And Suzuki moves to dismiss the claims against

it under Rules 12(b)(5) and 12(b)(6).  (Doc. 29.)  The court begins with Plaintiff's motion to

remand.

### A.     Plaintiff's Motion to Remand

Plaintiff contends that the court lacks subject-matter jurisdiction so this action must be

remanded to state court pursuant to 28 U.S.C. § 1447(c).  A district court may exercise removal

jurisdiction over "any civil action brought in a State court of which the district courts of the United

States have original jurisdiction."  28 U.S.C. § 1441(a).  The parties do not dispute whether the two requirements for diversity jurisdiction under § 1332(a) were met here—complete diversity of citizenship between the parties and sufficient facts establishing that the amount in controversy exceeds $75,000.  But as Plaintiff points out, under what is commonly referred to as the forum-defendant rule, "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2) (emphasis added).  *See also Goodwin v. Reynolds*, 757 F.3d 1216, 1221 (11th Cir. 2014) (explaining that the original purpose behind the forum-defendant rule was "to prevent gamesmanship by plaintiffs," namely fraudulent joinder to defeat diversity jurisdiction, and recognizing a defendant's race to the courthouse to remove a case before a forum defendant could be served as its own form of "gamesmanship").

Suzuki is a citizen of Oklahoma, the forum state in which the action was brought.  Suzuki's presence in the suit as a "forum defendant" would therefore arguably prevent removal to federal district court even if diversity were established.  However, as Polaris points out, the Notice of Removal was filed before Suzuki had been joined and served.[3]  According to Polaris, the plain language of the statute only prohibits removal *after* a forum defendant has been "joined and served."  *See* 28 U.S.C. § 1441(b)(2).  Polaris additionally argues that the forum-defendant rule should not apply because Suzuki is a fraudulently joined defendant.  (*See* Doc. 14 at 6.)

Plaintiff disagrees, arguing that the forum-defendant rule was designed to prevent Polaris from "docket trolling," i.e., removing the case to federal court before Plaintiff had a reasonable

---

[3] The petition was filed in state court on August 9, 2021.  (Doc. 2-1.)  Polaris filed the Notice of Removal on August 11, 2021, before either defendant had been served with process.  (*See* Doc. 2 at 2 n.1 ("Polaris has not been served with process."))  This is commonly referred to as "snap removal."

opportunity to serve Suzuki. (*See* Doc. 13 at 5.) According to Plaintiff, Polaris's interpretation of the statute would lead to an "absurd result" because Plaintiff did not have a reasonable opportunity to serve Suzuki before Polaris removed the action to federal court. (Doc. 13 at 6.) Plaintiff thus contends that the court lacks subject-matter jurisdiction as a result of the improper removal. (*See* Doc. 32 at 10.)

Federal courts are split on whether "snap removal"—hasty removal by a non-forum defendant before the plaintiff has an opportunity to serve the forum defendant—is permissible under the removal statute, and the Tenth Circuit has not addressed the issue. However, a review of district court cases in the Tenth Circuit reveals that courts have generally concluded that snap removal is not permitted if the forum defendant is not a sham party, and where a defendant removes before the plaintiff has had a reasonable opportunity to serve the forum defendant. *See, e.g.*, *Woods v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 917284, at *2 (W.D. Okla. 2020); *Flandro v. Chevron Pipe Line Co.*, 2019 WL 1574811, at *6 (D. Utah 2019); *but see Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc*., 955 F.3d 482, 487 (5th Cir. 2020) (allowing removal by an out-of-state defendant five days after action was filed, despite an unserved in-state defendant because the plain language of § 1441(b)(2) is unambiguous and did not lead to an absurd result).

The court is reluctant to interpret § 1441(b)(2) as permitting removal before the plaintiff has served *any* defendant. *See Howard v. Crossland Constr. Co., Inc.*, 2018 WL 2463099, at *2 (N.D. Okla. 2018) ("[C]ourts have also recognized a limited exception for 'absurd and bizarre,' results such as removal before the plaintiff has served any defendant . . . ."). But the court need not determine this issue because, as explained below, it agrees that Suzuki is a fraudulently joined defendant. As such, the court does not consider Suzuki to be an Oklahoma citizen for purposes of

§ 1441(b)(2).  Accordingly, the forum-defendant rule does not apply to this case and does not serve as a bar to removal.

### 1.   Fraudulent Joinder

The fraudulent joinder doctrine creates an exception to the forum-defendant rule.  Under this doctrine, "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'"  *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013).  The doctrine is designed to "strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove."  *Id*.  The Tenth Circuit has not expressly held that the fraudulent joinder doctrine creates an exception to the forum-defendant rule, but it has strongly suggested its application in dicta.  *See Brazell*, 525 F. App'x at 884 (stating that although neither party in the case specifically urged the application of the fraudulent joinder rule to prevent removal, the court had "serious doubt" that a fraudulently joined party could be considered a party "in interest properly joined" under § 1441(b)(2)); *see also Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1257 (D.N.M. 2014) (construing the fraudulent joinder doctrine as permitting removal whenever a plaintiff fraudulently joins a resident defendant to prevent removal by way of the forum-defendant rule).

"Fraudulent joinder is a term of art.  It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  *Ervin v. Minn. Life Ins. Co.*, 2020 WL 2521510, at *2 (E.D. Okla. 2020) (citation omitted).  As such, fraudulent joinder "need not involve actual fraud in the technical sense."  *Brazell*, 525 F. App'x at 881.  "Instead, it can occur when the plaintiff

joins a 'resident defendant against whom no cause of action is stated' in order to prevent removal under a federal court's diversity jurisdiction." *Id*. (quoting *Dodd v. Fawcett Pubs., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)). In general, the removing party must show that the plaintiff has "no cause of action" against the fraudulently joined defendant. *Id*. "Stated differently, 'the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant.'" *Phillips v. State Farm Fire & Cas. Co.*, 2023 WL 336142, at *2 (W.D. Okla. 2023) (citation omitted). In conducting this inquiry, the court is not limited only to the allegations set forth in the petition. *Id*. at *3. The court may also consider post-removal filings, as plaintiffs "are authorized to provide a more detailed statement of alleged facts existing at the time of removal which were not initially included in the petition." *Id*.; *see also Dodd v. Fawcett Publ'ns, Inc*., 329 F.2d 82, 85 (10th Cir. 1964) (stating that in assessing fraudulent joinder, "the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available").

Here, Defendants contend that Plaintiff has no cause of action against Suzuki because Oklahoma law prohibits products liability actions against non-manufacturing sellers except in limited circumstances, none of which apply here.

### 2.    Oklahoma law limits products liability actions against product sellers

Under Oklahoma law a product liability action may be based on a theory of negligence or strict products liability. *Farmers Ins. Co., Inc. v. Big Lots, Inc.*, 2015 WL 5943447, at *3 (N.D. Okla. 2015). In 1974, the Oklahoma Supreme Court first recognized a cause of action for strict products liability against "processors, assemblers, and all other persons who are similarly situated in processing a distribution." *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1361 (Okla. 1974). Under this cause of action, "the seller of a product in a defective condition, which is unreasonably

10

dangerous to the user or consumer, is strictly liable for the physical harm to the person or property caused by the defect." *Allenberg v. Bentley Hedges Travel Serv., Inc.*, 22 P.3d 223, 227 (Okla. 2001). When a plaintiff sues under a strict products liability theory, the plaintiff must establish (1) that the product caused plaintiff's injury; (2) that the defect existed in the product at the time it left the manufacturer's possession and control; and (3) that the defect made the product unreasonably dangerous. *See Kirkland*, 521 P.2d at 1363. The defect alleged "may be the result of a problem in the product's design or manufacture, or it may be the result of inadequate warnings regarding use of the product."[4] *Wheeler v. HO Sports Inc.*, 232 F.3d 754, 757 (10th Cir. 2000) (internal quotation marks omitted).

Since *Kirkland*, Oklahoma courts have applied manufacturers' product liability to various members of the manufacturer's marketing chain, including retailers, dealers or distributors, importers, and lessors. *Allenberg*, 22 P.3d at 227-28. However, in 2014, Oklahoma enacted an "innocent seller" statute, which limits the liability of non-manufacturing product sellers. The statute provides that "[n]o product liability action may be asserted against a product seller, other than the manufacturer," unless:

1. The product seller exercised substantial control over the aspect of the design, testing, manufacture, packaging, or labeling of the product that caused the alleged harm for which recovery of damages is sought; or

2. The product seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or

3. The product seller made an express warranty as to such product independent of any express warranty made by a manufacturer as to such product, such product failed to conform to the product seller's warranty, and the failure of such product to conform to the warranty caused the harm complained of by the claimant; or

---

[4] Oklahoma recognizes three types of strict products liability claims: failure to warn, manufacturing defect, and design defect. *See Recker v. C.R. Bard, Inc.*, 491 F. Supp. 3d 1029, 1034 (W.D. Okla. 2020).

4. The claimant is unable, despite a good-faith exercise of due diligence, to identify the manufacturer of the product; or

5. The manufacturer is not subject to service of process under the laws of the state; or

6. The court determines that the claimant would be unable to enforce a judgment against the manufacturer.

Okla. Stat. tit. 76, § 57.2(E). "Courts have interpreted this statute as adding a new element to the cause of action against a non-manufacturing product seller." *Shelton v. Sha Ent.*, *LLC*, 2020 WL 6389858, at *2 (W.D. Okla. 2020) (quotation and brackets omitted) (citing cases).

"Even with the advent of strict products liability, the negligence cause of action remains available to a plaintiff injured by a defective product." *Loomis v. Spec. Desanders, Inc.*, 2018 WL 4355205, at *3 (W.D. Okla. 2018); *but see Braswell v. Cincinnati Inc.*, 731 F.3d 1081, 1093 (10th Cir. 2013) (explaining that while Oklahoma has not eliminated a freestanding negligence claim for defective products, "[a]s a practical matter, however, it is highly unlikely a plaintiff will prevail on a negligence claim when he cannot do so on a products liability claim"). The elements of negligence are: "first, that the defendant had a duty to protect the plaintiff from injury; second, that the defendant failed to properly exercise or perform that duty, and third, that the defendant's failure to properly exercise or perform that duty caused the plaintiff's injury." *Loomis*, 2018 WL 4355205, at *3. "Under a negligence theory of recovery, a seller or supplier of a product has a duty to use reasonable care to provide adequate warnings or instructions to avoid injury to a foreseeable plaintiff." *Id*.

The innocent seller statute codifies the duties of a product seller, other than a manufacturer, as follows:

A product seller other than a manufacturer is liable to a claimant on the basis of negligence if the claimant establishes that:

12

1.   The product seller sold the product involved in such action;

2.   The product seller did not exercise reasonable care:

   a.   in assembling, inspecting, or maintaining such product, or

   b.   in passing on warnings or instructions from such product's manufacturer about the dangers and proper use of such product; and

3.   Such failure to exercise reasonable care was a proximate cause of the harm complained of by the claimant.

Okla. Stat. tit. 76, § 57.2(G)(1)-(3).

### 3.    Plaintiff fails to state a cognizable claim against Suzuki

Here, the court finds that the amended complaint fails to state a cognizable claim against Suzuki.  As Plaintiff admits, this is a products liability action based on injuries caused by the Polaris Ranger, which Plaintiff alleges was defective in its design or manufacture.  (Doc. 13 at 1-2 (explaining that "[t]his is a products liability case" based on injuries Plaintiff sustained after the Polaris Ranger "suddenly and unexpectedly caught fire")).  *See also Honeywell v. GADA Builders, Inc.*, 271 P.3d 88, 96 (Okla. Civ. App. 2011) (defining a "product liability action" as one "based on injuries caused by a defective product.").  Plaintiff's original claims and allegations against Polaris virtually mirrored those asserted against Suzuki.  However, as stated above, Oklahoma's innocent seller statute prohibits products liability actions against non-manufacturing sellers such as Suzuki except in a few, limited circumstances.

The amended complaint attempts to address this issue by alleging a handful of additional facts specific to Suzuki.  While the amended complaint still alleges that the Polaris Ranger was defective at the time Polaris placed it into the stream of commerce, (Doc. 26 at ¶ 5), Plaintiff now alleges that Suzuki installed/modified "the lighting and/or electrical systems of the Polaris

Ranger," which made the Polaris Ranger unreasonably dangerous, (*Id.* at ¶¶ 6, 18, 20).  The amended complaint alleges that the "alterations and/or modifications" Suzuki made "created a high probability that the Polaris Ranger will be involved in failures resulting in the loss of human life and/or severe and permanent personal injuries," and were a "substantial factor in causing the September 4, 2019 incident."  (*Id.* at ¶¶ 18-20.)  The amended complaint also alleges that Suzuki "made representations and warranties to Plaintiff related to the dealer preparations, inspections, and certifications performed by it, including representations and warranties related to the installation/modifications of the lighting and/or electrical systems of the Polaris Ranger that were relied upon by Plaintiff."  (*Id.* at ¶ 7.)

Plaintiff contends that these additional factual allegations place Suzuki's conduct in two of the exceptions to the innocent seller statute.  *See* Okla. Stat. tit. 76, § 57.2(E)(2) (providing an exception if the product seller "altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought"); *id.* § 57.2(E)(3) (providing an exception if the product seller "made an express warranty as to such product independent of any express warranty made by a manufacturer as to such product, such product failed to conform to the product seller's warranty, and the failure of such product to conform to the warranty caused the harm complained of by the claimant").  Plaintiff further contends that the amended complaint contains sufficient allegations to support a negligence claim under § 57.2(G).  And finally, Plaintiff contends that the innocent seller statute does not place any restrictions on breach of warranty or misrepresentation claims against product sellers.

The court disagrees.  Even with the addition of allegations specific to Suzuki, the averments are still conclusory and give little, if any, indication of what happened to Plaintiff.  The court is mindful of the difficulty in pleading a claim for relief based on an allegedly defective product

14

because there is often an imbalance of information between the plaintiff and the manufacturer and/or seller.[5]  While an injured plaintiff may not know the *precise* defect until after they have conducted discovery, the complaint must still include "sufficient factual detail to put the defendant on notice of the nature of the plaintiff's injury and the circumstances surrounding it."  *Hammonds v. Boston Scientific, Inc*., 2011 WL 4978369, at *2 (W.D. Okla. 2011).  The court finds that Plaintiff has failed to do so here.  Noticeably absent from the amended complaint is any reasonably-specific statement of what made the Polaris Ranger defective, or how the Polaris Ranger failed or otherwise caused Plaintiff's injuries.  Indeed, Plaintiff claims that Polaris and Suzuki both caused the Polaris Ranger to be unreasonably dangerous.  But the amended complaint fails to explain what Polaris did in designing or manufacturing the Polaris Ranger to make it unreasonably dangerous.  And it fails to explain what Suzuki did, independent of Polaris, to create a defect in the Polaris Ranger and cause it to be unreasonably dangerous, and/or what Suzuki did to aggravate an already-existing defect to make it more dangerous.

The only vague explanation provided in the amended complaint is that Suzuki's "installation/modification of the lighting and/or electrical systems of the Polaris Ranger" somehow played a "substantial factor" in causing the incident.  (Doc. 26 at ¶¶ 6, 19.)  This fails to provide any insight as to what Plaintiff believes the Polaris Ranger did and/or failed to do in causing Plaintiff's injuries.  Plaintiff cannot rely solely on the injury itself as proof that the product was defective.  *See Miller v. C.R. Bard, Inc.*, 2021 WL 1063800, at *3 (W.D. Okla. 2021) (explaining that the "mere possibility that a defect caused the injury" is insufficient, because a court may not "infer that the injury is of itself proof of the defect").  Plaintiff's failure to plausibly allege the

---

[5] The court notes that there may not be much of an imbalance of information in this case, as Plaintiff admits that the Polaris Ranger has been located at Plaintiff's expert's warehouse in Covington, Louisiana since at least March 25, 2020.  (Doc. 16 at 7-6.)

existence of a specific defect is fatal to all of Plaintiff's claims. *See Miller*, 2021 WL 1063800, at *5-6 (granting summary judgment on plaintiff's products liability claims and explaining that the existence of "an actual defect" is necessary to establish liability, regardless of whether liability is based on the theory of negligence, breach of warranty, or strict liability in tort).

The court additionally finds that the complaint fails to plausibly allege that any exceptions to § 57.2(E) apply. The amended complaint does not specifically identify how Suzuki altered or modified the Polaris Ranger, nor does it explain how Suzuki's actions were a "substantial factor" in causing the accident. *See* Okla. Stat. tit. 76, § 57.2(E)(2). Similarly, the amended complaint fails to provide any details about the express warranties Polaris and Suzuki allegedly made. As such, it is impossible to determine whether Suzuki made any express warranties independent of those made by Polaris as required by § 57.2(E)(3). *See* Okla. Stat. tit. 12A § 2-313(1)(a)-(b) (defining express warranties to include "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" and "[a]ny description of the goods which is made part of the basis of the bargain"). "While the complexity of certain facts may merit broad descriptions under *Twombly/Iqbal*, there is no great complexity to identifying affirmative statements." *Recker*, 491 F. Supp. 3d at 1035 (holding the plaintiff failed to state a claim for breach of express warranty where complaint only described the express warranty in conclusory terms).

Next, the court finds that Plaintiff fails to state a plausible claim for negligence against Suzuki under § 57.2(G). There are insufficient facts to establish that Suzuki breached a duty owed to Plaintiff, or that Suzuki's negligence proximately caused Plaintiff's injuries. The amended complaint does not describe any warnings or instructions that Suzuki had a duty to pass on. *See* Okla. Stat. tit. 76, § 57.2(G)(2)(b). Nor does the amended complaint provide a sufficient factual

16

basis to conclude that Suzuki should have known the Polaris Ranger was defective or dangerous upon inspection, or that Suzuki somehow made it dangerous during assembly.  *See id.* § 57.2(G)(2)(a).  And the amended complaint similarly fails to explain in non-conclusory terms how Suzuki's negligence was the proximate cause of Plaintiff's injuries.  The court cannot infer breach, much less proximate causation, from the fact of injury alone.[6]  *See Farmers Ins. Co. Inc. v. Big Lots, Inc.*, 2015 WL 5943447, at *4 (N.D. Okla. 2014) (dismissing negligence claim where plaintiff failed to allege specific facts that the seller knew, or in the exercise of reasonable care should have known, that the product was defective or dangerous).

And finally, to the extent Plaintiff's remaining breach of warranty and misrepresentation claims are not already barred by § 57.2(E), the court finds these claims are not supported by any well-pleaded facts either.  For example, Plaintiff alleges that Suzuki "breached the implied warranty of merchantability by selling the Polaris Ranger when it was not fit for the ordinary purpose for which such goods are used because of the safety, stability, maneuverability, roadworthiness, and crashworthiness problems described more fully herein."  (Doc. 26 at ¶ 38.) Yet nowhere in the amended complaint does it describe any of these problems "more fully," or otherwise plausibly allege the existence of a specific defect.  Similarly, Plaintiff fails to establish that Suzuki knew of any "particular purpose" for which the Polaris Ranger was required.[7]  And while "there is no great complexity to identifying affirmative statements," Plaintiff fails to identify

---

[6] Based on the amended complaint's vague and conclusory allegations of negligence, this is just a strict liability claim couched as a negligence claim, and is thus barred by § 57.2(E).  *See Braswell*, 731 F.3d at 1093 n.4.

[7] The amended complaint alleges that Suzuki breached the implied warranty of fitness for a particular purpose because Suzuki knew "that the Polaris Ranger in question was being purchased for the express and intended *purpose of using the Polaris Ranger as an all-terrain vehicle*." (*Id*. at ¶ 40 (emphasis added)).  But this is the *ordinary* purpose for which the Polaris Ranger would be used, based on the amended complaint's definition of the Polaris Ranger as an "all-terrain vehicle." *See* Okla. Stat. tit. 12A § 2-315, cmt. 2 ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.").

17

any misrepresentations Suzuki allegedly made.  *See Hammonds*, 2011 WL 4978369, at *2 (noting that fraudulent misrepresentation claims must be plead with particularity and dismissing misrepresentation and warranty claims where the amended complaint failed to "identify what warranties and misrepresentations were made").

Accordingly, the court finds Plaintiff has failed to state a cognizable claim against Suzuki. The amended complaint offers nothing more than labels, conclusions, and a formulaic recitation of the elements of Plaintiff's claims against Suzuki.  *See id.* (holding that amended complaint failed to state a claim under negligence and strict liability theories of products liability where it failed to include "any statement of how *this specific* Pinnacle device failed or otherwise caused injury to the plaintiff" (emphasis in original)); *Spencer v. Bristol-Myers Squibb Co.*, 2021 WL 864148, at *3 (dismissing plaintiff's claims where the complaint did not contain sufficient non-conclusory facts to support a claim under either a strict liability or negligence theory of products liability); *Shelton*, 2020 WL 6389858, at *2 (rejecting plaintiff's argument that it was impossible to determine whether any of the exceptions to the innocent seller statute applied without conducting discovery, because discovery is only authorized for a plaintiff who has stated a legally cognizable claim to develop the facts, not to permit a plaintiff to find out whether he has a claim).

### 4.    Because Defendants have shown that Plaintiff has no cause of action against Suzuki, the court dismisses these claims for lack of subject-matter jurisdiction.

Plaintiff has already amended his pleading once as a matter of course.  Even considering the allegations in the amended complaint, the court finds that Plaintiff has failed to state a plausible claim against Suzuki for the reasons stated above.  And Plaintiff has neither requested nor provided any basis for the court to believe that any future amendments could cure these deficiencies.  *See Hicks v. FG Minerals LLC*, 2020 WL 2104928, at *4 (E.D. Okla. 2020) ("Under these

circumstances, where one must assume Plaintiff gave the current pleading his best effort, the Court finds that any further amendment (which is not requested) would be futile."). Plaintiff has not provided a more detailed statement of alleged facts existing at the time of removal which were not initially included in the petition.[8] *See Phillips*, 2023 WL 336142, at *3 (stating that plaintiffs are authorized to provide a more detailed statement of alleged facts that the court can consider in determining whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim). Nor has Plaintiff argued that additional facts exist in his response to Polaris's motion to transfer or Suzuki's motion to dismiss. (*See generally* Docs. 16, 32.) Simply put, nothing in the record provides the court with a reasonable basis to believe Plaintiff might succeed in at least one claim against Suzuki. *See Hicks*, 2020 WL 2104928, at *3-4 (finding that forum defendant was fraudulently joined where plaintiff's affidavits and briefs failed to establish that there were additional facts that existed at the time of removal that could cure pleading deficiencies).

Accordingly, the court finds that Defendants have established Plaintiff's fraudulent joinder of Suzuki. "In this situation, the fraudulently joined defendant is disregarded as a party." *Id.* at *6 (E.D. Okla. 2020). As a result, complete diversity of citizenship exists, and subject-matter jurisdiction has been shown. *See id*. Therefore, this case was properly removed to federal court and cannot be remanded under 28 U.S.C. § 1447(c). Plaintiff's motion to remand is thus denied. And the proper disposition of Plaintiff's claims against Suzuki is a dismissal without prejudice for lack of subject-matter jurisdiction.[9] *See Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242,

---

[8] The only additional evidence presented by Plaintiff (besides evidence regarding service of process) is his affidavit, wherein he merely states that he traveled to Suzuki's store in Oklahoma to purchase the Polaris Ranger, and on two more occasions for service and replacement parts. (Doc. 16-2 at 1-2.) Plaintiff does not offer any statements about the alleged defect, Suzuki's alterations/modifications, the cause of the incident, or anything else that would give the court a reasonable basis to believe that he has a plausible cause of action against Suzuki.

[9] Because the court lacks subject-matter jurisdiction, the court need not address whether Plaintiff properly effectuated service over Suzuki. *See, e.g*., *Trans/Air Mfg. Corp. v. Merson*, 524 F. Supp. 2d 718, 721 (D. Md. 2007) (declining to rule on employee's motion to dismiss for lack of personal jurisdiction before ruling on employer's motion to remand

1249 (10th Cir. 2004) ("Once it determined that [the resident defendants] were fraudulently joined, the district court had no jurisdiction to resolve the merits of the claims against them.  In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice.").

### B.      Polaris's Motion to Transfer Venue

Next, the court considers Polaris's motion to transfer venue.  Polaris moves to transfer because Oklahoma has no interest in adjudicating this dispute, as the only connection to Oklahoma is Suzuki, a fraudulently joined defendant.  Polaris contends that the case should be transferred to the Eastern District of Texas, which is where the accident site, Plaintiff, and other witnesses are all located.

Section 1404(a) of Title 28 provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The factors a district court should consider when deciding whether to transfer an action under 28 U.S.C. § 1404(a) include:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to [ensure] attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; . . . and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

---

when the alleged defect in subject-matter jurisdiction, i.e. lack of complete diversity, did not present a difficult or novel question of law and "both expedition and sensitivity" to the state court compelled the court to hear the remand motion first).

The first issue is whether the proposed transferee venue is one in which proper venue lies under 28 U.S.C. § 1391. The court finds that the Eastern District of Texas is a proper venue because this is where "a substantial part of the events or omissions giving rise to the claim" occurred. *See id.* § 1391(b)(2). Although Plaintiff was ultimately transported to the Dallas, Texas area, which is in the Northern District of Texas, the accident occurred at an ATV park in the Eastern District of Texas, and this is where the EMS personnel that responded to the accident are located. (*See* Doc. 16 at 6.) As such, the Eastern District of Texas is a proper venue in which the action may have been brought. *See, e.g.*, *Crochet v. Seadrill Ams. Inc.*, 2022 WL 18492150, at * 2 (W.D. La. 2022) (holding in wrongful death action that proposed transferee venue was one in which proper venue lies for purposes of § 1391 because the decedent's death occurred, and the autopsy was performed, in an area encompassed within that district); *Ashton v. Knight Transp., Inc.*, 2009 WL 2407829, at *3 (N.D. Tex. 2009) (holding that venue would be proper in the District of Kansas because that is where the accident that gave rise to the cause of action occurred).

Having determined venue is proper in the Eastern District of Texas, the court turns to the § 1404 factors. First, the court finds that Plaintiff's choice of forum in the Eastern District of Oklahoma is entitled to little weight. Plaintiff does not reside in Oklahoma, and the facts giving rise to the lawsuit do not have a material relation or significant connection to Oklahoma. *See Emps. Mut. Cas. Co.*, 618 F.3d at 1168 (explaining that a plaintiff is generally entitled to deference in choice of forum, but such consideration is given little weight if the plaintiff's choice is not where they reside or the "facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum"). Indeed, Plaintiff's primary contention is that the Polaris Ranger was unreasonably dangerous due to a defect in its design or manufacture, which caused it to catch fire. But the Polaris Ranger was not designed or manufactured in Oklahoma,

nor did the accident occur in Oklahoma.  The only connection to Oklahoma is the fact that this is where Suzuki is located.  However, as stated above, Suzuki is a fraudulently joined defendant and Plaintiff's claims against Suzuki have been dismissed.[10]

The next factors, availability of witnesses and cost of making necessary proof, weigh strongly in favor of transfer.  *See Emps. Mut. Cas. Co.*, 618 F.3d at 1169 ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a).").  The vast majority of witnesses are located in Texas.   These witnesses include: Plaintiff; his step-son; other individuals at the park when the incident occurred; EMS personnel (employees of UT Health East Texas EMS and East Texas Air 1) who responded to the incident, transported Plaintiff to the UT Jacksonville Helipad, and flew Plaintiff to Parkland Dallas; and subsequent medical providers at Parkland Health & Hospital System, and Texas Spine and Joint Rehabilitation.[11]   (Doc. 14-1.)  Thus, the Eastern District of Texas is a more convenient and cost-effective venue, which weighs significantly in favor of transfer.  *See Daniels v. Cessna Aircraft Co.*, 2009 WL 1226741, at *2 (D. Kan. 2009) ("Because most of the witnesses, parties, and counsel reside in the Wichita area and the majority of the evidence is located in Wichita, this factor weighs significantly in favor of defendant.").

---

[10] Plaintiff argues that he traveled to Oklahoma to purchase the Polaris Ranger and to have it serviced.  (Doc. 16 at 5.)  But this is not apparent from the amended complaint.  (*See* Doc. 26 at ¶ 7 (alleging that Suzuki "marketed, sold, and delivered the Polaris Ranger to Plaintiff from its location noted above . . . .")).  Even if the amended complaint had alleged that Plaintiff traveled to Oklahoma, these facts have no bearing on the only remaining claims in this case, which allege that Polaris is liable under various theories for manufacturing a defective and unreasonably dangerous product.

[11] The court disagrees with Plaintiff's contention that the majority of witnesses are in Oklahoma and Minnesota.  The facts and circumstances surrounding the transaction and delivery of the Polaris Ranger are not relevant to any of the remaining claims against Polaris.  And the fact that Polaris's employees are located in Minnesota has little bearing as Polaris will be able to make their employees available to testify if necessary.  *See* Fed. Prac. & Proc. § 3851 (4th ed. 2022) ("[T]he convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial.").

Next, the court finds that difficulties that may arise from congested dockets weighs in favor of transfer.  *See Emps. Mut. Cas. Co.*, 618 F.3d at 1169 ("When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge.").  Indeed, the undersigned is serving in this case by designation to help alleviate the congested docket in the Eastern District of Oklahoma due to the decision of the U.S. Supreme Court in *McGirt v. United States*, 140 S. Ct. 2452 (2020).  (*See* Doc. 36 (finding good cause for delay in entering a scheduling order due to the demands of the court's criminal docket and noting that "civil cases will most likely not be tried before a district judge in the foreseeable future")).  Due to the increase in new criminal cases, the Eastern District of Oklahoma has had significantly more trials and a greater time from filing to disposition of civil cases than the Eastern District of Texas.   *See* U.S. District Courts, *National Judicial Caseload Profile* at 83 (2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf  (showing that in the 12-month period ending on June 30, 2022, the Eastern District of Oklahoma had 1.5 judgeships, 63 trials completed, 502 weighted filings per judgeship, and the median time from filing to disposition of civil cases was 14.6 months); *id.* at 35 (showing that in the same period the Eastern District of Texas had 8 judgeships, 16 trials completed, 693 weighted filings per judgeship, and the median time from filing to disposition of civil cases was 8.8 months).  Accordingly, the court finds this factor weighs in favor of transfer.

Finally, the remaining factors are either neutral or weigh slightly in favor of transfer.  The choice-of-law factor is neutral because the case does not involve complex legal issues, the substantive laws of Texas and Oklahoma are essentially equivalent with respect to the remaining issues, and the judges in each potential forum are qualified to decide the state-law issues.  *See*

*Emps. Mut. Cas. Co.*, 618 F.3d at 1169-70.  Having dismissed the claims against Suzuki, it appears that Texas is the only state with a localized interest in adjudicating this dispute, which involved an incident that occurred in Texas involving a Texas resident.  And Plaintiff has not identified any obstacles to a fair trial in the Eastern District of Texas where he resides.

Accordingly, the court finds that transfer of venue to the Eastern District of Texas, Tyler Division is appropriate under 28 U.S.C. § 1404(a).[12]  Transfer will allow a more convenient and efficient resolution of the case's merits.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's motion to remand (Doc. 13) is DENIED.

IT IS FURTHER ORDERED that Suzuki's motion to dismiss (Doc. 29) is GRANTED. Plaintiff's claims against Suzuki are DISMISSED without prejudice for lack of subject-matter jurisdiction.

IT IS FURTHER ORDERED that Polaris's motion to transfer venue (Doc. 14) is GRANTED.  The Clerk is directed to take all appropriate steps necessary to transfer this action to the United States District Court for the Eastern District of Texas, Tyler Division.

IT IS SO ORDERED.  Dated this 10th day of February, 2023.

*s/ John W. Broomes*
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[12] The accident occurred at River Run Park in Cherokee County, Texas, and Plaintiff is a resident of Henderson County, Texas.  These counties are both located within the Tyler Division of the Eastern District of Texas.  *See* U.S. District Court for the Eastern District of Texas, Court Locator Map, https://www.txed.uscourts.gov/?q=court-locator (showing that Henderson and Cherokee Counties are located in the Eastern District of Texas, Tyler Division).